RECEIVED US Dist Court-UT
FEB 18 '20 AM11:20

**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

FILED US District Court-UT
FEB 19 '20 PM02:55

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| WENDI L. RUSSELL, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case: 2:20-cv-00103 |
| PARALLON ENTERPRISES, LLC, | : Civ | Assigned To : Waddoups, Clark |
| | : | Assign. Date : 2/18/2020 |
| | : | Description: Russell v. Parallon Enterprises |
| Defendant. | : Ho | |

COMES NOW, Wendi L. Russell, Plaintiff herein, complains of

Defendant Parallon Enterprises, LLC, demands trial by jury and, as and for causes of

action, alleges as follows:

### PARTIES

1.    Plaintiff Wendi L. Russell (hereinafter "Plaintiff") is a citizen of

the United States and a resident of the State of Utah.

2.    The entity named as Defendant herein is Parallon Enterprises,

LLC.  At all times relevant hereto, Parallon Enterprises, LLC (hereinafter

"Defendant"), employed 15 or more employees and was an employer within the meaning of the Americans with Disabilities Act.

      3.    On September 6, 2017, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission's Antidiscrimination and Labor Division in which she alleged that Defendant discriminated against her based on her disability and engaged in unlawful acts of retaliation.

      4.    Plaintiff filed her Charge of Discrimination within 180 days from the last date of the alleged harm. The Court may consider for its determination all events that occurred between May 18, 2017, the 180-day jurisdictional mark, and the date of filing of September 6, 2017. The Court may treat all other events occurring prior to May 18, 2017 as being untimely for purposes of relief. However, the Court may give weight to evidence of such events for evidentiary purposes. All jurisdictional requirements have been met as required by the Americans with Disabilities Act ("ADA"), as amended.

### JURISDICTION AND VENUE

      5.    The Court has subject matter jurisdiction of this case pursuant to federal question. Plaintiff alleges Defendant took adverse action against her, in violations of the ADA, which provides that it is unlawful to discriminate against an

2

employee in her employment on the basis of her disability and to retaliate against an employee for engaging in protected activity.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in the State of Utah, Parallon Enterprises, LLC, employed Ms. Russell in the State of Utah; all of the employment practices alleged herein occurred within the State of Utah; and the relevant employment records are maintained in the State of Utah.

## STATEMENT OF FACTS

7.  Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through ___ above as if alleged in full herein.

8.  Plaintiff alleges that she has several impairments, including bi-polar disorder, post-traumatic stress syndrome (PTSD), borderline personality disorder, and depression.

9.  Defendant hired Plaintiff in March 2012 as a Pre-registration Representative. Plaintiff's duties consisted of scheduling patients for medical procedures, verifying insurance coverage, and pre-registering patients.

10.  Plaintiff alleges she informed Defendant of her mental impairments at various times and in various ways.

3

11.     Plaintiff alleges that the symptoms of her conditions became aggravated upon the death of her husband in August 2016.  Plaintiff alleges the, thereafter, she experienced difficulties in regulating her emotions and struggled with concentration, thinking and speaking coherently and in working.

12.     Plaintiff alleges that, in November 2016, she requested an accommodation to allow her to work a ten-hour-day-four-day work week in lieu of the conventional eight-hour day, five-day workweek.  Plaintiff alleges she needed the change in schedule to deal with matters surrounding her late husband's passing and its deleterious effect in mental impairments.

13.     Plaintiff alleges that Defendant failed to respond to such a request for accommodation.

14.     Plaintiff alleges that, as a result of such failure to respond and other factors, Plaintiff temporarily became unable to work in a productive manner.

15.     Plaintiff alleges that, in December 2016, Plaintiff applied for a leave of absence.  She alleges that, during such leave of absence, she applied for and received short-term disability insurance benefits ("STD").

16.     Plaintiff alleges that, on April 21, 2017, she returned to work.

4

17.     Plaintiff alleges that, upon her return to work on April 21, 2017, her management closely followed her activities and micro managed her work, disrespected her and yelled at her.

18.     Plaintiff alleges she complained to Human Resources Administrator Dorene Nelson several times about not being accommodated and being treated differently and adversely based on her disability but Defendant did little, if anything, to address her complaints.

19.     Plaintiff alleges that, thereafter, Defendant began looking for reasons to terminate her employment.

20.     For example, Plaintiff alleges that, in May 2017, she was assisting a patient register for a procedure when she realized the patient she was speaking to was her uncle.  Plaintiff acknowledges that she was aware that, based on Defendant's policy and her familial relationship with the patient, she was supposed to transfer the patient to a co-worker.  However, she alleges she knew her uncle would not willingly cooperate with any other representative and would get frustrated and combative and, therefore, she decided to handle the call.

21.     Plaintiff alleges that her uncle had questions regarding an upcoming procedure.  She alleges she contacted the medical provider to ask questions about the procedure.

5

22.     Plaintiff alleges that, on June 23, 2017, Defendant issued her a final written warning for her actions, as summarized above in ¶¶ 18 and 19.

23.     Plaintiff alleges that, on June 28, 2017, Defendant placed her on a performance improvement plan ("PIP") because Defendant alleged her productivity rate was low.  Plaintiff alleges that her productivity rate was not low and that Defendant imposed unreasonable standards that no one could realistically meet.

24.     To help her achieve standards, the PIP scheduled Plaintiff for training with the Team Lead to occur on July 7, 2017.  The PIP also required Plaintiff to meet with her manager once a week to review her progress.

25.     Plaintiff alleges that, on the evening of June 28, 2017, she called her friend and co-worker Becky Beagley ("Beagley").  Plaintiff alleges that she contacted Beagley to discuss work related matters.  Plaintiff also felt that Beagley was talking about her because of the amount of time Plaintiff had taken off due to death of her husband.  Plaintiff acknowledges she left a voicemail for Beagley that contained language she should not have used.

26.     On July 3, 2017, Defendant terminated Plaintiff's employment.

27.     Plaintiff alleges the reason for the termination was pretextual in that the real reason for the termination had to do with her disability and her protected activity.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT DENIED PLAINTIFF A
### REASONABLE ACCOMMODATION

28.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 27 above as if alleged in full herein.

29.     In order to establish a claim of failure to accommodate, Plaintiff must allege facts which establish, or tend to establish, that: (1) she has a physical or mental impairment that substantially limits one or more of the major life activities; (2) she was qualified in that she was able to perform the essential functions of the job she held or desired, with or without a reasonable accommodation; (3) she requested a reasonable accommodation or Defendant knew, or should have known, of her need for an accommodation; and (4) Defendant refused or declined or, in any event, failed to provide a reasonable accommodation. *Sanchez v. Vilsack,* 695 F.3d 1174, 1177 (10th Cir. 2012).

30.     To establish the first element of her prima facie case, Plaintiff alleges that she has a physical or mental impairment that substantially limits one or more of the major life activities.

31.     Plaintiff has the impairments of bi-polar disorder, PTSD, borderline personality disorder, and depression.

7

32.     In August 2016, Plaintiff's husband passed away which exacerbated her conditions, causing her difficulty in regulating her emotions, difficulty in concentrating, thinking and speaking coherently and working and a sense of panic.

33.     Plaintiff's allegations satisfy the first element of her prima facie case.

34.     To establish the second element of her prima facie case, Plaintiff alleges that she was qualified in that she was able to perform the essential functions of the job she held or desired, with reasonable accommodation.

35.     Plaintiff's allegations satisfy the second element of her prima facie case.

36.     To establish the third element, Plaintiff alleges that she requested reasonable accommodations or Defendant knew or should have known of her need for accommodations.  In December 2016, Plaintiff requested an accommodation that would allow her to work four, ten-hour shifts per work week.  Likewise, Plaintiff requested a leave of absence and short-term disability in December 2016.

37.     Plaintiff's allegations satisfy the third element of her prima facie case.

38.     To establish the final element, Plaintiff alleges that Defendant refused to provide her with a reasonable accommodation.  Plaintiff requested a four-

day workweek because of her disability and because she needed to handle her late

husband's estate. Upon clarification from Plaintiff's physician, it was determined that,

based on Plaintiff's disability, she could benefit from a four day workweek. Defendant

did not approve the accommodation in a timely manner and so Plaintiff needed to

request an accommodation of a leave of absence and went out on a leave of absence

from December 31, 2016, to April 21, 2017.

39.    Plaintiff's allegations satisfy the final element of her prima facie

case of failure to accommodate.

## SECOND CAUSE OF ACTION
## DEFENDANT'S DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT WAS MOTIVATED BY HER DISABILITY

40.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 39 above as if alleged in full herein.

41.    In order to establish a claim of discrimination based on disability,

Plaintiff must allege facts which establish, or tend to establish, that: (1) she is disabled

in that she is has a physical or mental impairment which is substantially limiting to a

major life activity; (2) she was otherwise qualified for the position in that she could

perform the essential duties of the position she held or desired, with or without

reasonable accommodation; (3) Defendant subjected her to an adverse action; and (4)

the circumstances surrounding the adverse action give rise to an inference of

discrimination on the basis of disability. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

42.     As set forth above, Plaintiff's allegations satisfy the first and second elements of her prima facie case.

43.     To establish the third element, Plaintiff alleges that Defendant subjected her to an adverse action.   An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits". *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation omitted).

44.     In June 2017, Defendant placed Plaintiff on a PIP supposedly based on low productivity and low quality assurances statistics.  The PIP called for improvement in performance standards by meeting productivity standards at 90% and assurance standards at 95%.  To help Plaintiff achieve productivity standards, Defendant scheduled training with the Team Lead and required Plaintiff to meet with her manager once a week to review progress.  A PIP is actionable as an adverse action if it "affects a significant change in the plaintiff's employment status". *Haynes v. Level 3 Commc'ns L.L.C.,* 456 F.3d 1215, 1224 (10th Cir. 2006).  Plaintiff alleges this PIP

brought about significant changes in her employment status.  Thus, Plaintiff alleges her placement on a PIP is an adverse employment action.

45.     On July 3, 2017, Defendant terminated Plaintiff's employment. Plaintiff alleges this is also an adverse employment action.

46.     Plaintiff's allegations satisfy the third element of her prima facie case.

47.     To establish the final element, Plaintiff alleges that the circumstances surrounding the adverse actions give rise to an inference of discrimination.  Potential circumstances that give rise to discrimination include, but are not limited to: (1) disparate treatment which but for the employee's protected trait would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision.  *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

48.     Plaintiff alleges her disability and actions caused by her disability directly brought about the termination of her employment.

49.     Plaintiff's allegations establish the final element of her prima facie case of discrimination on the basis of disability.

### THIRD CAUSE OF ACTION
### DEFENDANT SUBJECTED Plaintiff TO
### UNLAWFUL RETALIATION

11

50.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51.     In order to establish a claim of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant subjected Plaintiff to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

52.     Plaintiff alleges that she engaged in protected activity.  In December 2016, Plaintiff requested a reasonable accommodation.  The Tenth Circuit Court has held that requests for reasonable accommodation are protected activity under the ADA.  *See Wehrley v. American Fam. Mut. Ins. Co.,* 513 F. App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc,* 502 F.3d 1176, 1194 (10th Cir. 2007)).  Plaintiff also complained to Defendant about how Defendant was mistreating her because of her disability.

53.     Plaintiff's allegations satisfy the first element of her prima facie case.

54.     Plaintiff alleges that, contemporaneous with or subsequent to the protected activity, Defendant subjected her to an adverse employment action. An adverse action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter Plaintiff or others from engaging in a protected activity.

55.     Plaintiff alleges Defendant's placement of her on a PIP and termination of her employment on July 3, 2017, are adverse employment actions.

56.     Plaintiff's allegations satisfy the second element of her prima facie case.

57.     Plaintiff alleges that there is a causal connection between the protected activity and the adverse employment actions. Plaintiff's disabilities affected her behavior. Plaintiff's alleged violation of Defendant's Code of Conduct policy was a pretextual reason for the termination. Had Defendant accommodated Plaintiff, she likely would have performed better than she did, she likely would not have been placed on a final warning on a PIP, and likely would not have been fired.

58.     Plaintiff's allegations satisfy the final element of her prima facie case.

## IV. DAMAGES

13

59.     Ms. Russell alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress, emotional distress, and damages to her employability.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.     Declaring that Defendant discriminated against Ms. Russell on the basis of her disability and retaliated against her, in violation of the ADA;

2.     Awarding Ms. Russell "make whole" relief — namely, by awarding Ms. Russell the lost wage and lost benefit differential from the time Defendant terminated Ms. Russell's employment until Ms. Russell secures comparable employment, or for a period of five years, whichever occurs first;

3.     Awarding Ms. Russell her reasonable attorney's fees and costs;

4.     Awarding Ms. Russell such other relief as may be just and equitable.

DATED this 14 day of February, 2020.

_/s/ David J. Holdsworth_
David J.  Holdsworth
*Attorney for Plaintiff*